**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

LEONARD W.,

                                    Plaintiff,

      v.

ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.

No. 5:18-CV-00993
(DNH/CFH)

_____

**APPEARANCES:**

Law Offices of Steven R. Dolson
126 North Salina Street, Suite 3B
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for defendant

**OF COUNSEL:**

STEVEN R. DOLSON, ESQ.

JOANNE JACKSON PENGELLY, ESQ.

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

Plaintiff Leonard W.[1] brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits and supplemental security income ("SSI") benefits. See Dkt. No. 1 ("Compl."). Plaintiff moves for remand for

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff by first name and last initial.

1

further proceedings, and the Commissioner cross moves for a judgment on the pleadings. See Dkt. Nos. 10, 16. For the reasons that follow, it is recommended that plaintiff's motion be granted, the Commissioner's motion be denied, and the matter be remanded for further administrative proceedings.

## I. Background

Plaintiff was born in 1955, and finished high school. See T. 18, 135.[2] At the time of the hearing, he lived with his wife, who also collects SSI benefits. See id. at 29. Plaintiff last worked as a garbage truck driver in the "beginning of [20]15," but was fired when he hit a parked car. Id. at 30. Prior to working as a garbage truck driver, plaintiff worked as a tractor-trailer truck driver. See id. at 17.

On August 24, 2015, plaintiff protectively filed a Title II application for disability insurance benefits. See T. 135. On September 12, 2015, plaintiff protectively filed a Title XVI application for SSI benefits. See id. at 138. In both applications, plaintiff alleged a disability onset date of January 22, 2015. The applications were denied initially on October 21, 2015. See id. at 68. Plaintiff requested a hearing, and a video hearing was held on July 12, 2017, before Administrative Law Judge ("ALJ") Karen L. Schneider. See Id. at 25-42. On August 23, 2017, the ALJ rendered a partially favorable decision. See id. 12-19. On July 30, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 10-1. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

2

Commissioner. See id. at 1-3. Plaintiff commenced the present action on August 17, 2018. See Compl.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986. However, if the correct legal standards were applied

3

and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); see Venio v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

### B. Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

---

[3] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec'y of Health and Human Servs., 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467). "In addition, an ALJ must set forth the crucial factors justifying his

5

findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).

### III. Discussion

### A. ALJ's Determination

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 22, 2015. See T. 14. At step two, the ALJ found that, "[s]ince the alleged onset date of disability," the plaintiff had the severe impairment of "degenerative disc disease status post cervical spine fusion." Id. In addition, the ALJ noted that plaintiff "was also diagnosed with hypertension and depression. However, there is no evidence that these impairments resulted in minimal functional limitations and therefore, they are non-severe." Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. Before reaching step four, the ALJ concluded that,

> [p]rior to December 21, 2016, [plaintiff] had the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c). He could lift 50 pounds occasionally, 25 pounds frequently, and sit and stand for 6 hours in an 8-hour workday.[4]

---

[4] The ALJ noted that "[o]cassionally means occurring very little up to 1/3rd of the time, or about 2 hours in an 8-hour workday. Frequently means occurring from 1/3rd to 2/3rds of the time, or about 6 hours in an 8-hour workday." T. at 15 (citing SSR83-10).

6

Id. at 15. However, the ALJ determined that "[b]eginning on December 21, 2016, [plaintiff] has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). He can lift 20 pounds occasionally, 10 pounds frequently, and sit and stand for 6 hours in an 8-hour workday." Id. at 17.

At step four, the ALJ determined that, before December 21, 2016, plaintiff was capable of performing past relevant work as a tractor-trailer truck driver and garbage truck driver because performing such work did not require him to perform work-related activities precluded by his residual functional capacity ("RFC"). See T. 17. However, the ALJ determined that, as of December 21, 2016, plaintiff's RFC has prevented him from performing past relevant work. See id. at 18. At step five, considering plaintiff's age, education, work experience, RFC, the testimony of a vocational expert, and the Medical-Vocational guidelines, the ALJ concluded that there are no jobs that exist in significant numbers in the national economy that plaintiff can perform. See id. Thus, the ALJ determined, as of December 21, 2016, plaintiff has been under a disability within the meaning of the Social Security Act. See id.

### B. Analysis[5]

Plaintiff argues that the ALJ errored by affording no weight to the opinions of the physician's assistants ("PAs") who treated him following his two surgeries, Gabriella Canal, PA ("PA Canal") and Ward Irvin, Jr., PA ("PA Irvin"), for "the sole reason . . . that [the PAs] are not considered acceptable medical sources" under the regulations. Dkt. No. 10 at 5. He contends that the ALJ's "failure to address these opinions [was] not

---

[5] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination of the individual documents.

harmless error" because "[s]everal aspects of th[ose] opinions substantially differ from the [pre-December 21, 2016 RFC] finding of [m]edium work." Id. at 6. Moreover, plaintiff posits that, to the extent that the Commissioner argues that the PAs' opinions were not entitled to any weight because they concerned only temporary limitations related to his post-operative condition following his two surgeries, the ALJ did not state as much in his determination; therefore, for the Court to conclude as such would require "improper post-hac [sic] rationalization." Id. (citation omitted).

The Commissioner counters that the ALJ properly discounted the opinions of the PAs because they are not acceptable medical sources who could not proffer medical opinions as defined in 20 C.F.R. § 404.1527(a)(1). See Dkt. No. 16 at 4. In any event, the Commissioner contends, plaintiff has failed to establish that the limitations expressed in the PAs' opinions—restricting plaintiff to lifting no more than 5 lbs.— satisfied the durational requirement of lasting or being expected to last 12 months insofar, as that restriction was limited to his post-operative recovery. See id. at 5. The Commissioner notes that "[p]laintiff explicitly admitted that (a) the PA's subsequently 'lift[ed] that restriction" and (b) he was able to lift much more than five pounds both before and after his recovery periods." Id. at 5 (citing T. 32, 177 (internal citations omitted)). Alternatively, the Commissioner argues, even if the ALJ erred in omitting detailed analysis of his reasons for discrediting the PAs' opinions, plaintiff's admission establishes that any error was harmless. Id. at 6.

**1. Weight Afforded to the Physician's Assistants' Opinions**

8

For the period between January 22, 2015, and December 20, 2016, the ALJ concluded that plaintiff's physical impairment of degenerative disc disease resulted in plaintiff having an RFC to engage in medium work, including the capability lifting 50 lbs. occasionally and 25 lbs. frequently. See T. 15. In reaching plaintiff's pre-December 21, 2016 RFC determination, the ALJ afforded the opinion of the state consultative examiner Kalyani Ganesh, M.D. ("Dr. Ganesh") "significant weight." Id. at 16. As relevant here, based on her October 12, 2015 examination, Dr. Ganesh concluded that plaintiff had "[n]o gross limitation sitting, standing, or walking. He has a mild to moderate limitation lifting, carrying, pushing and pulling." Id. at 373. She also concluded that plaintiff had a full range of motion in his "shoulders, elbows, forearms, and wrists bilaterally"; and 5/5 strength "in the upper and lower extremities." Id. In addition, Dr. Ganesh opined that plaintiff's "[c]ervical spine show[ed] full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine." Id. The ALJ observed that Dr. Ganesh had examined plaintiff, but acknowledged that her opinion "d[id] not provide a minimum and maximum weight [plaintiff] is able to lift, carry, push, and pull." Id. at 16.

The ALJ afforded PA Canal's and PA Irvin's opinions "no weight." T. 16. In her February 17, 2016 treatment notes concerning plaintiff's post-operative examination following his January 29, 2016 anterior cervical discectomy and fusion (ACDF) surgery, PA Canal noted: "[r]eturn to clinic 6 weeks"; "[n]o pushing, pulling, twisting, bending; no lifting greater than 5 pounds"; and "[plaintiff'] is 100% totally disabled." Id. Plaintiff underwent his second surgery, C3-C7 posterior fusion, on August 17, 2016. See id. at 467. On September 5, 2016, at his post-operative follow-up examination, PA Irvin

9

noted, as relevant here: "[r]eturn to clinic 6 weeks," "[n]o pushing, pulling, no lifting greater than 5 pounds," and "[plaintiff] is 100% totally disabled." Id. at 469. In affording their opinions no weight, the ALJ stated that the PAs were "not . . . acceptable medical source[s]. Furthermore, the final responsibility for deciding whether [plaintiff] is disabled under the Social Security Act is reserved to the Commissioner." Id. 16.

Residual Functional Capacity ("RFC") is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)). In determining a claimant's RFC, "[a]n ALJ should consider all medical opinions received regarding the claimant." Reider v. Colvin, No. 15-CV-6517P (MWP), 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (internal quotation marks and citation omitted); see also SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record."). For claims filed before March 27, 2017, such as in the present case, "medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis, prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (emphasis added). "Acceptable medical sources" include licensed physicians (medical or osteopathic doctors) psychologists, optometrists, podiatrists, and speech-language pathologists. Id. § 404.1513(a)(1)-(5) (effective Sept. 3, 2013 to Mar. 26, 2017). The regulations note

10

that, "[i]n addition to evidence from acceptable medical sources [the Commissioner] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work." Id. § 404.1513(d) (emphasis added). "Other sources" include "[m]edical sources not listed in paragraph (a) of . . . section" 404.1513, such as PAs. Id. at § 404.1513(d)(1).

The regulations state that, while "[o]pinions from medical sources who are not acceptable medical sources" will be "consider[ed] using the same factors" for considering acceptable medical source opinions, "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts of each case." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). The regulations further provide that, under certain circumstances,

> it may be appropriate to give more weight to the opinion of a
> medical source who is not an acceptable medical source if
> he or she has seen the individual more often than the
> treating source, has provided better supporting evidence and
> a better explanation for the opinion, and the opinion is more
> consistent with the evidence as a whole.

Id. However, the Second Circuit has made clear that "the ALJ has the discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995). Finally, the ALJ "generally should explain the weight given to opinions from" sources who are not acceptable medical sources "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

11

With respect to medical sources not considered "acceptable medical sources," Social Security Ruling 06-03p explains

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, <u>physician assistants</u>, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939 at *3 (Aug. 9, 2006) (emphasis added).

This Court has, in at least one instance, stated that SSR 06-03p "seems to prohibit . . . per se rejection" of a PA's opinion on the sole basis that a PA is not an "acceptable medical source." See Logan v. Colvin, No. 12-CV-01058 (WGY), 2016 WL 1039926, at *5 (N.D.N.Y. Mar. 14, 2016) (internal quotation marks and citation to the record omitted). In Logan, the ALJ did "not assign[] any weight," to the opinion of the treating PA, reasoning that, "*a [PA] is not an acceptable medical source.*" Id. (internal quotation marks and citation to the record omitted). The Court rejected the Commissioner's contention that affording the PA's opinion no weight solely because she was not an acceptable medical source was harmless error, and observed that her opinion was "starkly different" from the opinions of the consultative examining physicians. Id. Therefore, the Court reasoned, the ALJ's determination to give no weight to the PA's opinion for the sole reason that she was not an acceptable medical source constituted "legal error, [and that] a remand [wa]s necessary so that the [ALJ could] weigh the[] competing opinions on their merits, as the regulations, binding on [the

12

ALJ], require." Id. (citing 20 C.F.R. § 402.35(b)(1) ("We publish Social Security Rulings in the Federal Register under the authority of the Commissioner of Social Security. They are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted.")) (footnote omitted).

Here, as an initial matter, the ALJ properly declined to give any weight to the PAs' opinions insofar as they stated that plaintiff was "100% totally disabled," T. 458, 469, as the final determination of disability and a claimant's inability to work ultimately rests solely with the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); see also Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999) ("The final question of disability is . . . expressly reserved to the Commissioner."). However, as in Logan, the ALJ expressly stated that the PAs' opinions were "given no weight" because they were "not . . . acceptable medical source[s]." T. 16. Therefore, applying the reasoning in Logan, the ALJ's decision to, in effect, "per se reject[]" the PAs' opinions on the sole basis that they are not acceptable medical sources could be considered legal error requiring remand. See Logan, 2016 WL 1039926, at *5; see also SSR 06-03p, 2006 WL 2329939 at *3. Similar to Logan, the limitations the PAs placed on plaintiff following each of his surgeries—that he could not push, pull, lift, or carry more than 5 lbs.—differ significantly from the opinion of Dr. Ganesh which stated only that plaintiff had "a mild to moderate limitation lifting, carrying, pushing, and pulling." T. 373; see id. at 458, 496; see also Logan, 2016 WL 1039926, at *5. As plaintiff argues, the ALJ failed to address these opinions and, therefore, failed to provide an adequate explanation for the weight given to the opinions of the PAs or to provide a discussion of the evidence in reaching

13

her pre-December 21, 2016 RFC determination to allow a "subsequent reviewer to follow [her] reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

Indeed, the ALJ's written decision fails to point to any record evidence in support of her conclusion that, between January 22, 2015, and December 20, 2015, plaintiff was capable of lifting 50 lbs. occasionally, 25 lbs. frequently, and sitting 6 out of 8-hour hours in a workday. See T. 15. The ALJ's determination in this regard is based exclusively on Dr. Ganesh's October 12, 2015 report in which she concluded that plaintiff had "a mild to moderate limitation lifting, carrying, pushing, and pulling." Id. at 373; see id. at 16. However, as the ALJ expressly acknowledged, Dr. Ganesh's opinion did not provide any maximum or minimum amount of weight that plaintiff was able to push, pull, carry, or lift. Id. at 16. Therefore, this is matter appears distinguishable from cases in which courts have held that the ALJ properly relied on a consultative medical examiner's report that used the terms "moderate" and "mild" in reaching the claimant's RFC determination where the report also "evidence[d] a thorough physical examination of [the p]laintiff and include[d] a highly specific report of the examination." Ashby v. Astrue, No. 11-CV-02010 (RMB/DF), 2012 WL 2477595, at *12 (S.D.N.Y. Mar. 27, 2012); Cf. Boltz v. Berryhill, No. 15-CV-00587 (FPG), 2017 WL 999204, at *3, 4 (W.D.N.Y. Mar. 15, 2017) (holding that a consultative medical examiner's opinion that the plaintiff would have "mild to moderate limitations in routine activities" was not impermissibly vague because the opinion was supported by the physician's "own physical examination" and was also "consistent with the medial record as a whole"). For example, in Blau v. Berryhill, 395 F. Supp. 3d 266 (S.D.N.Y. 2019), the court concluded

14

that the ALJ properly relied on a consultative medical examiner's report that used the terms "moderate" and "mild" where the consultative examiner provided "specific" temporal limitations concerning the plaintiff's ability to sit and stand. Blau v. Berryhill, 395 F. Supp. 3d 266, 281 (S.D.N.Y. 2019). As discussed above, Dr. Ganesh's report did not provide any specific minimum or maximum weight that plaintiff could lift, and the record is bereft of facts from which such limitations could be quantified. See T. 371-74.

Notably, as Dr. Ganesh's opinion predated both of plaintiff's surgeries, it could not have accounted for the demonstrable deterioration in plaintiff's condition following her examination. See T. at 373. Indeed, plaintiff's first surgery occurred only approximately three months after Dr. Ganesh's October 2015 examination. See id. at 458. In addition, although the Commissioner correctly notes that plaintiff stated in his September 14, 2015 functional report that he "can't lift more than 20 lbs." and admitted at the hearing that the PAs' 5 lb. limitation was subsequently changed "to 20 [lbs.]," id. at 32, 177, there does not appear to be any support in the record for the ALJ's pre-December 21, 2016 RFC determination that plaintiff was capable of performing the lifting requirements associated with medium work as defined under 20 C.F.R. § 404.1567(c)—particularly with respect to the period between plaintiff's first surgery on January 29, 2016, and December 20, 2016. Further, although the ALJ states that plaintiff's symptoms improved and that his treatment was "essentially routine" following his second surgery in August 17, 2016, her assessment ignores substantial record evidence concerning plaintiff's first surgery—including PA Irvin's August 18, 2016 treatment note wherein he explained that the "fusion" from plaintiff's first surgery in January 2016 "had failed to progress as planned," as a result of which, over the course

15

of the approximately six-month intermediate period, he "continued to have symptoms of worsening radiating neck pain," "imaging had shown pseudoarthrosis," and "[t]herefore[,] it was decided that surgical intervention of his posterior spine was the most ideal course of action." Id. at 484. Similarly, although the ALJ cites portions of plaintiff's medical records from after his second surgery indicating that his pain levels were "controllable," that he indicated "feel[ing] better," and that his "[r]ecent symptom trend" was "[i]mproving," absent from those medical records are any statements or indications relating to his physical ability to lift or sit. Id. at 468, 495, 679. Thus, given the absence of any record support for the ALJ's pre-December 21, 2016 RFC determination, it was not harmless error for the ALJ to summarily reject the PAs' opinions even though plaintiff admitted that their initial restriction of lifting only 5lbs. was subsequently raised to 20lbs. See id. at 32.[6]

As a final matter, insofar as the Commissioner contends that the PAs' lifting limitations did not satisfy the durational requirement of lasting or being expected to last at least 12 months because "each of the PAs' statements was provided less than three weeks after [p]laintiff had surgery" and plaintiff admitted that the limitation was "subsequently" raised and was "able to lift much more than five pounds both before and after his recovery periods," this argument is unsupported by the record. Dkt. No. 16 at 5. The only evidence the Commissioner points to in support of this argument is plaintiff's admissions that he could lift up to, but not more than, 20lbs—which is below the threshold for being capable of performing medium work and provides no indication

---

[6] The Commissioner's contention that plaintiff did not argue that the ALJ's RFC determination is unsupported by substantial evidence and, therefore, that plaintiff has waived that argument is misplaced. See Dkt. No. 16 at 4. Plaintiff does, albeit in broad terms, aver that "[t]he [ALJ's] decision is not supported by substantial evidence." Dkt. No. 10 at 2.

16

whatsoever as to frequency with which plaintiff could perform such lifting over the course of an eight-hour workday . See id.; T. 32, 177; 20 C.F.R. § 404.1567(c). Furthermore, the record is devoid of factual support to establish when, if ever, plaintiff's "recovery periods" ended and if he was ever able to lift more than 20lbs as would be required to perform medium work. Dkt. No. 16 at 5. Indeed, Craig T. Montgomery, M.D., plaintiff's surgeon, observed in March 2016 that plaintiff would remain "in the collar because he need[ed] posterior instrumentation" and predicted that "the recovery from [the second surgery would] probably be about 2 months once he [wa]s healed up and starting physical therapy." T. 464. Thus, record evidence suggests that plaintiff had not physically recovered between his January and August 2016 surgeries. See id. Moreover, given the short time frame between plaintiff's being prescribed three months of physical therapy on October 20, 2016, see T. 475, and the established disability date of December 21, 2016, the Court cannot determine whether the ALJ's pre-December 21, 2016 RFC determination that plaintiff was capable of medium work—particularly for the period between his first surgery in January 2016 and the established disability date—is supported by substantial evidence, even assuming the PAs' lifting restriction was, at some unknown time, raised to 20lbs.

In sum, the undersigned is unable to determine how the ALJ arrived at his RFC determination that plaintiff was able to engage in medium work for the period between January 22, 2015 and December 20, 2016—particularly with respect to the period following plaintiff's January 2016 surgery until December 20, 2016. Accordingly, it is recommended that the matter be remanded for further proceedings, during which the record can be appropriately developed, potentially including obtaining another

17

assessment of plaintiff's physical limitations between January 22, 2015, and December 20, 2015.  Because remand is recommended based on the foregoing reasons, the undersigned declines to reach plaintiff's remaining arguments.

### IV.  Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**RECOMMENDED**, that plaintiff's motion (Dkt. No. 10) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: February 25, 2020
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge